**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Empire Industries Inc. and | ) | |
| Your Global Warehouse LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-cv-3646 |
| | ) | |
| v. | ) | Related to Case |
| | ) | No. 1:18-cv-00698 |
| Winslyn Industries, LLC, | ) | |
| The Fireclay Factory LLC, and | ) | **Jury Trial Demanded** |
| Niko (INT) Ltd. | ) | |
| | ) | |
| Defendants, | ) | |

**PLAINTIFFS' COMPLAINT FOR TORTIOUS INTERFERENCE WITH**
**CONTRACT, UNJUST ENRICHMENT, BREACH OF CONTRACT, FRAUD,**
**CIVIL CONSPIRACY, AND INJUNCTIVE RELIEF**

Plaintiffs Empire Industries Inc. and Your Global Warehouse LLC (collectively
"Empire"), by and through their attorneys, Husch Blackwell LLP, for their Complaint
against Defendants Winslyn Industries, LLC; Niko (INT) Ltd; and The Fireclay
Factory LLC, state as follows.

**INTRODUCTION**

1.     Based on discovery taken in a related action filed in this district (Case
No. 1:18-cv-00698, proceeding before the Honorable Matthew Kennelly), Empire
has uncovered a multi-year course of conduct by which Defendants Winslyn
Industries, LLC ("Winslyn"); Niko (INT) Ltd ("Niko"); and The Fireclay Factory LLC
("Fireclay") have conspired together to defraud Empire and conceal Niko an Fireclay's

1

breach of an exclusivity agreement covering the manufacture of fireclay-style kitchen sinks for Empire.

2. In mid-2016, Empire, Fireclay and Niko entered into an agreement by which Niko and Fireclay would produce fireclay-style sinks to Empire's specifications on an exclusive basis. Fireclay and Niko further agree to manufacture molds in order to make sinks for Empire and agreed to use these molds exclusively for Empire.

3. However, in contravention of this clearly and repeatedly stated agreement, Fireclay began producing – and Niko joined Fireclay in marketing – sinks made pursuant to Empire's designs for others, making these sinks from the molds to which Empire had exclusive rights. Fireclay and Niko then fraudulently denied that they were breaching their agreement with Empire, repeatedly asserting that they were not marketing or shipping Empire's sinks to others, all while doing just that.

4. Winslyn became part of this scheme in early 2017, when Niko and Fireclay marketed Empire's sinks to Winslyn, along with their own, pre-existing designs. After reviewing a stylish catalog of Fireclay designs, and a plain spreadsheet of Empire designs, Winslyn chose Empire's designs and undertook to become the sole and exclusive distributor of Empire's sinks for Fireclay and Niko.

5. Exploiting the absence of any strong supplier of fireclay-style sinks, Winslyn then undertook to market Empire's sinks to large United States-based distributors, including Home Depot, Lowes, Ferguson, and Menards. The reaction of these major distributors to Empire's designs was immediate and strong. Thousands of sinks were to be ordered.

6.     As part of their joint marketing effort, Fireclay sent physical samples of Empire's sinks to Winslyn, placing them in interstate commerce and knowingly and improperly transferring Empire's property to Winslyn's storage facilities located within the geographical scope of the jurisdiction of the United States District Court for the Northern District of Illinois.  Winslyn then shipped these sinks around the country, on at least six separate occasions (and probably many more), even after being informed that the sinks belonged to Empire.  Winslyn also shipped one of Empire's improperly obtained sinks to a third party, Imperial Pacific Trading ("IPT"), at some point in or prior to August, 2017, with IPT returning this illicitly obtained sample to Winlsyn's warehouse located in this judicial district.

7.     With strong demand indicated by multiple suppliers, Winslyn appears to have looked forward to an extremely profitable business until June, 2017, when Fireclay and Niko provided a picture of the sinks they proposed to send one of Winslyn's major prospective customers, Menards.  The sink looked nothing like the Empire-designed sinks Winslyn ordered and plainly would be unacceptable to Menards or to other major customers expecting to buy Empire's designs.

8.     Winslyn demanded to know why Fireclay and Niko had changed their design.  Fireclay and Niko representatives responded that the designs Winslyn ordered, and molds required to make them, belonged to someone else and therefore could not be supplied to Menards.

9. This disclosure fell like a bomb at Winslyn. Panicked calls ensued and the Winslyn / Fireclay / Niko enterprise to market Empire's sinks was thrown into disarray.

10. In response to Winslyn's demands, and in a desperate effort to save their mutual business and make good on commitments made to Menards and others, Niko and Fireclay determined that they would shift one aspect of Empire's design by an imperceptible amount (7.5 millimeters on sinks more than a half meter across), thus claiming a "new design." Fireclay and Niko representatives assured Winslyn, however, that this change would be imperceptible, both in marketing photographs and to end consumers buying the resulting product. and, they continued to use the mold components made for Empire to make these "new" sinks.

11. Notwithstanding the development of this "new" design, and even though it had been informed of Empire's exclusive rights, Winslyn thereafter continued to retain and use one or more physical specimens of Empire's sinks in its marketing activities, knowing these sinks belonged to Empire. And, contrary to its prior representations that it was unaware that it was Empire specifically that had rights to the sinks at issue, Winslyn even used Empire's packaging in its efforts, distributing pictures of boxes clearly labeled with Empire's name (and its affiliate, Your Global Warehouse), and its Olde London and Sutton Place brand labels.

12. When enjoined from selling this sinks, Winslyn, Niko and Fireclay concocted a further plot to make additional minor adjustment to Empire's sinks, falsely representing to Judge Kennelly that they were using new molds to do so.

13.     Following this multi-year enterprise of deception, Empire brings this complaint for breach of contract, tortious inference with contract, unjust enrichment, fraud, conversion, and conspiracy.  In addition to requesting immediate injunctive relief, Empire requests compensatory and punitive damages against Winslyn, Niko, and Fireclay in amounts to be proven at trial, and requests that liability be imposed on a joint and several basis.

## PARTIES

14.     Plaintiff Empire Industries Inc. is a New Jersey corporation with its principal place of business in Paterson, New Jersey.  Since 1976, Empire has been in the business of manufacturing and distributing high quality bathroom and kitchen products to developers, home builders, and individual retail purchasers.  Among other products, Empire sells countertops, sinks, vanities, cabinets, mirrors, shower doors, and a variety of kitchen and bathroom accessories.  While based in the Northeast, Empire is a national distributor of such products.

15.     Plaintiff Your Global Warehouse LLC is a Florida limited liability corporation that acts as Empire's import agent.

16.     Defendant Winslyn Industries, LLC is an Illinois limited liability company with its principal place of business in Bartlett, Illinois.  On information and belief, Winslyn's manager and members are residents and citizens of Illinois. Winslyn also is in the business of selling certain kitchen accessories, including kitchen sinks and oven fans.  Based on Winslyn's website (https://www.winslyn.com/), Empire understands that Winslyn distributes such products on a national basis, including through Home Depot, Walmart, and Amazon.com.

17.     Defendants The Fireclay Factory LLC (of Fujairah, United Arab Emirates) and Niko (INT) Ltd (of the United Kingdom) are affiliated companies in the business of, possibly among other things, manufacturing, distributing, and marketing certain models of fireclay-style sinks.

18.     While Empire is not aware of the specific corporate arrangement between Fireclay and Niko, they appear to act as alter egos of each other, with representatives of each acting as agents for both.  (For example, Niko's Tony Wood appears to act on behalf of both Niko and Fireclay, while Fireclay's Peter Shilling appears also to have authority to act for Niko.)

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

20.     Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because a substantial portion of the events giving rise to the claims at issue occurred in this judicial district.  Among other things:

    a.     Winslyn, Niko, and Fireclay do business in this district, shipping numerous sinks here;

    b.     Niko and Fireclay breached their obligations to Empire in this district by shipping Empire's sinks to Winslyn and conspiring with Winslyn to subvert Empire's rights and fraudulently concealing their various breaches of duties owed to Empire;

6

c.   Winslyn has acquired and distributed products interfering with Empire's relationship with Fireclay in this district and Fireclay has supplied those products in this district; and

d.   Winslyn has negotiated agreements giving rise to this dispute within this district.

21.   While Fireclay and Niko are not United States companies, they have subjected themselves to jurisdiction in this judicial district by, among other things, (1) purposely availing themselves of the privilege of conducting commercial and other activities here; (2) marketing Empire's sink designs to one or more persons and entities in this judicial district, thereby breaching their agreements to Empire in this district; (3) engaging in extensive negotiations with parties in this district, including through hundreds of emails and dozens of phone calls directed toward this district; (4) participating in a conspiracy to defraud that was and is centered in this district; and (5) shipping Empire's property, and other property, to this district and concealing that property here.

## FACTS COMMON TO ALL COUNTS

22.   In and following July, 2016, Empire entered into agreements with Fireclay and Niko whereby Empire provided Fireclay and Niko with exclusive, proprietary designs for certain models of kitchen sinks.  Niko and Fireclay agreed to produce these sinks for Empire on an exclusive basis.

23.   Empire's expectation was that this contractual relationship would yield net profits to Empire of around $3 million per year, of which it assigned a portion to Your Global Warehouse.

24.     In and around February and March, 2017, Fireclay provided a glossy, stylish catalog of its own sinks to Winslyn, along with a Microsoft Excel spreadsheet containing pictures of Empire's sink designs.  In response, Winslyn expressed its interest in marketing Empire's sinks to various North American distributors.

25.     Fireclay and Niko then provided numerous pictures of Empire's sinks, and other marketing materials provided to it by Empire, to Winslyn for the purpose of marketing Empire's sinks to Winslyn's potential customers.  In addition, in and around March and April, 2017, Winslyn ordered certain of Empire's Olde London and possibly Sutton Place sinks from Fireclay.  Fireclay then shipped these sinks, directly or indirectly, to Winslyn's warehouse in Bartlett, Illinois.

26.     While Empire's efforts to market its sinks were fouled by Fireclay's diversion of its attention and efforts to facilitate Winslyn's marketing campaign, Winslyn's efforts proceeded spectacularly.

27.     On June 2, 2017, Winslyn informed Fireclay of a major win – Menards, one of the largest retailers of home products in North American, had awarded Winslyn "its business."  Other major distributors, such as Ferguson and Home Depot, followed, preliminarily committing to market Empire's sinks on their websites and in their stores.  Thousands of sink sales and millions in profit were to be expected.

28.     However, once it came close to the time to start shipping product, Fireclay dropped a series of bombshells.

29.     First, on June 19, 2017 – only weeks after Menard's decided to acquire Empire's sink designs – Fireclay sent Winslyn a picture of the sink style it intended

to ship to Menards. Shockingly, the picture bore no resemblance to the Empire sinks Winslyn previously promised to supply to Menards and others.

30.     Confronted with the fact that its last-minute attempt to comply with its obligations to Empire was foiled when Winslyn rejected Fireclay's alternative design, Fireclay and Niko dropped their second bomb on Winslyn: The sink design Winslyn (and Menards, Ferguson, and others) ordered belonged to another customer.

31.     A crisis ensued, with multiple panicked conference calls and emails exchanged. In the course of this unfolding disaster, Winslyn, Niko, and Fireclay embarked on a new and entirely fraudulent scheme. In a desperate effort to save their mutual business, and to make good on commitments made to Menards and others, Winslyn, Niko, and Fireclay determined that they would shift one aspect of Empire's design by an imperceptible amount, thus claiming a "new design."

32.     Fireclay's Peter Shilling and Niko's Peter Wood assured Winslyn, however, that this change would be imperceptible, both in marketing photographs being provided to Winslyn's potential distributors, such as Menards, and to end consumers buying the resulting product.

33.     And, although molds would normally take months to design, Fireclay was able to cut off that issue by using the mold forms and supporting infrastructure already set up for Empire – molds that Fireclay and Niko committed to using only for Empire. Using five of the six pieces necessary to form a mold, and numerous custom supporting parts previously made for, and belonging to, Empire, Fireclay simply

swapped out the front piece of its Empire molds and created a "new" sink indistinguishable from its prior sink.

34.     Notably, neither Winslyn, nor Niko, nor Fireclay appears ever to have considered informing Empire of their marketing of Empire's designs.

35.     Indeed, rather than repudiate any contractual obligations to Empire, Fireclay and Niko, acting through Messrs. Shilling and Wood, repeatedly affirmed their contractual commitments throughout this time, promising to remedy Fireclay's production deficiencies, to ship product in the quantity and quality demanded by Empire, and to refrain from selling Empire's sink designs to others.

36.     Indeed, Niko at one point requested a Letter of Intent from Empire in order to evidence to creditors that Fireclay would have sufficient future demand to justify investment in new kilns, representing that Niko and Fireclay would rely on Empire's future business to expand their production capacity, supposedly for Empire's benefit.   Empire's affiliate Your Global Warehouse provided the requested Letter of Intent in reliance on the representations made by Messrs. Wood and Shilling that Fireclay would only sell Empire's sinks to Empire.

37.     However, concurrently with providing Empire's sinks to Winslyn, Fireclay was having extended difficulties fulfilling orders made by Empire.  Fireclay and Niko breached numerous contractual commitments to ship sinks in the quantities and at the quality requested by Empire, hindering Empire's ability to market its designs.  Meanwhile, Fireclay and Niko were facilitating Winslyn's efforts to sell the very same designs to other customers.

38.     Niko in particular breached its exclusively obligations to Empire by directly facilitating Fireclay's marketing of sinks to Winslyn, in this district, in particular by assuring Winslyn that there would be no perceptible difference between Empire's sinks and the sinks produced by Fireclay for Menards.

39.     Becoming suspicious, Empire's representative and principal, Jacob Goren, travelled to Fireclay's factory in Fujairah, United Arab Emirates, on November 18, 2017.

40.     There, he observed nearly identical copies of Empire's sinks being prepared for shipment.  While these sinks exhibited a slight change in the front, or apron, portion of the sinks, they otherwise appeared to have been fired using the mold parts that had been created for Empire.

41.     Incensed that Fireclay would go into competition with him as to his own sink models, and use Empire's molds and the production capacity that Empire in essence had paid for, Mr. Goren demand to know where the sinks were being shipped.

42.     Fireclay's representative specifically denied that any such sinks were being shipped to North America and reaffirmed Fireclay's and Niko's commitment that they would not sell sinks based on Empire's designs to other parties.

43.     Notwithstanding that Winslyn has been aware of Empire's exclusive contractual relationship with Fireclay and Niko since at least June 19, 2017, if not earlier, Winslyn continued to market Empire' sink design, use Empire sinks as product exemplars, and convert Empire sinks and other property, including product packaging, to its own use.

44.     In addition to marketing Empire's sinks to Menards, Winslyn and IPT engaged in negotiations regarding the sale of Empire's sinks in August and September, 2017.

45.     By October, 2017, IPT appears to have acquired at least two orders of Empire's sinks directly from Fireclay

46.     Concerned that IPT's direct purchase and sale of Empire's sinks from Fireclay would undercut Winslyn's pricing (which itself would undercut Empire's pricing), Winslyn negotiated for and obtained, by October 17, 2017, an agreement with Fireclay and Niko whereby Winslyn would become the sole supplier of Empire's sinks to IPT and by which Fireclay agreed not to ship such sinks directly to IPT.

47.     On June 21, 2018, Judge Kennelly Court enjoined "Winslyn Industries, LLC and anyone affiliated or acting in concert with it … from purchasing, marketing, or selling sinks obtained from The Fireclay Factory, LLC based on plaintiff Empire Industries, LLC's Olde London and Sutton Place designs."

48.     On July 6, 2018, the Court modified its order to apply to "sinks obtained from The Fireclay Factory, LLC with a design that is identical to or visually indistinguishable from plaintiff Empire Industries, LLC's Olde London and Sutton Place designs."

49.     At the time of the Court's order, multiple shipping containers, containing hundreds of fire-clay style sinks, were en route to Winslyn's warehouse in Bartlett, Illinois.

50.     Winslyn claims to have accepted delivery of one of these containers, which it asserts has been moved to a third-party storage location.  Winslyn also claims to have refused delivery of two other containers and to lack knowledge as to their disposition.

51.     Notwithstanding its October, 2017, agreement that it would not sell sinks directly to IPT, Fireclay either redirected Winslyn's containers to IPT or sent additional containers to IPT directly.

52.     Concurrently with redirecting at least two of Winslyn's containers of Empire sinks to other retailers for sale in the United States, in direct violation of the Court's June 21, 2018 order, Winslyn, Niko and Fireclay have engaged in extensive negotiations and planning in an effort to continue to market and sell modified versions of Empire's sinks in the United States notwithstanding the Court's June 21, 2018 order in an effort to build on and preserve relationships previously and unjustly built on Empire's original sinks.

53.     Empire therefore brings this complaint seeking injunctive relief and monetary damages against Winslyn, Niko, and Fireclay.

## COUNT I:
## TORTIOUS INTERFERENCE WITH CONTRACT
## (Your Global Warehouse Against Winslyn)

54.     Empire and Your Global Warehouse incorporate paragraphs 1 through 53 as if fully set forth in this Count I.

55.     Empire and Your Global Warehouse (directly or as a third-party beneficiary) have valid and enforceable agreements with Fireclay and Niko whereby

13

Fireclay and Niko have agreed to produce sinks pursuant to Empire's proprietary designs exclusively for Empire.

56.     Empire and Your Global Warehouse (directly or as a third-party beneficiary) also have valid and enforceable agreements with Fireclay and Niko whereby Fireclay was to produce sinks using Empire's molds exclusively for Empire.

57.     Winslyn has been aware of the foregoing agreement and obligations since at least June 19, 2017, and has subsequently been informed of the agreement between Empire, on the one hand, and Fireclay and Niko on the other, by both Empire itself and by communications between attorneys for Empire and Winslyn. Winslyn also has been informed of this agreement by Fireclay and Niko.

58.     Winslyn has interfered with the foregoing agreement by: (1) obtaining sinks fired in Empire's molds; (2) contracting for and acquiring sinks based on Empire's proprietary designs; (3) inducing Fireclay and Niko to supply sinks to Winslyn in violation of their contractual obligations to Empire; (4) falsely representing to Empire that the sinks produced by Fireclay were made pursuant to designs previously marketed by Winslyn or pursuant to designs that differ from those made for Empire; (5) contracting to sell sinks based on Empire's proprietary designs to third parties; and (6) refusing to repudiate these contracts.

59.     Empire and Your Global Warehouse (acting as Empire's import agent) have been damaged by Winslyn's conduct, and will continue to be damaged in the future, by virtue of: (1) its sale of sinks based on Empire's designs; (2) disruption of Empire's supply; (3) frustration of Empire's ability to obtain market share; (4)

dilution of the value of Empire's proprietary designs; and (5) increased expenses associated with alternative supplies, all resulting in decreased sales, increased expenses, and reduced overall net profits that may exceed several million dollars a year for the foreseeable future.

60.     As a direct and proximate cause of the foregoing tortious interference with their exclusivity agreements, Empire and Your Global Warehouse have suffered monetary damages in an amount that exceeds $75,000.00, exclusive of costs and interest.

61.     As a direct and proximate cause of the foregoing tortious interference, Empire and Your Global Warehouse have suffered and will continue to suffer an irreparable injury for which it has no adequate remedy at law.

**Wherefore**, Plaintiffs respectfully requests that the Court grant the following relief:  (a) award temporary and thereafter permanent injunctive relief against Winslyn requiring it to stop utilizing Empire's proprietary sink designs; (b) award compensatory damages against Winslyn in an amount in excess of $75,000.00; and (c) award all other relief that this Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT
### (Empire against Niko and Your Global Warehouse against all Defendants)

62.     Empire and Your Global Warehouse incorporate paragraphs 1 through 60- as if fully set forth in this Count II.

63.     Winslyn, Niko, and Fireclay have knowingly and intentionally marketed sinks designed by Empire, obtained physical copies of those sinks, and used their improperly obtained sinks to develop their fireclay lines of kitchen sinks.

Collectively, they have sold hundreds, if not thousands, of sinks which – while some may have been slightly modified – were either identical to or intended to look just like Empire's sinks.  In doing so, Winslyn, Niko, and Fireclay have been able to develop and capitalize on the good will built – not through their own efforts, intellectual property, or designs – but on the back of Empire's efforts.

64.     Winslyn, Niko, and Fireclay thereby have obtained substantial benefits at Empire's expense that they cannot justly retain, including, specifically, their gross profit on the sale of Empire's sinks and sink designs.

**Wherefore**, Plaintiffs respectfully requests that the Court direct Winslyn, Fireclay, and Niko to account for, and forfeit, their gross profit on all sales of fireclay style sinks acquired made using Empire's designs or molds.

### COUNT III (AGAINST FIRECLAY): BREACH OF CONTRACT

### (Empire against Niko and
### Your Global Warehouse against Niko and Fireclay)

65.     Empire and Your Global Warehouse incorporate paragraphs 1 through 64 as if fully set forth in this Count III.

66.     Empire and Your Global Warehouse (directly or as a third party beneficiary) have valid and enforceable agreements with Fireclay and Niko whereby Fireclay and Niko have:  (1) agreed to produce sinks pursuant to Empire's designs exclusively for Empire and Your Global Warehouse and (2) to supply Empire's sinks solely to Empire and Your Global Warehouse.

67. Fireclay and Niko have breached the foregoing agreement by contracting to supply and supplying Empire's sinks, sink designs, and marketing material to Winslyn in violation of their contractual obligations to Empire.

68. Empire has been damaged by Fireclay's and Niko's conduct, and will continue to experience damages in the future, by virtue of: (1) Winslyn's sale of Empire's sinks; (2) disruption of Empire's supply; (3) frustration of Empire's ability to obtain market share; (4) dilution of the value of Empire's proprietary designs; and (5) increased expenses associated with alternative supplies, all resulting in decreased sales, increased expenses, and reduced overall net profits that may exceed several million dollars a year for the foreseeable future.

69. As a direct and proximate cause of Fireclay's breach of Empire's agreement, Empire and Your Global Warehouse have suffered monetary damages in an amount that exceeds $75,000.00, exclusive of costs and interest. Empire's damages include its own lost profits and those assigned to Your Global Warehouse.

70. As a direct and proximate cause of Fireclay's breach of Empire's agreement, Empire and Your Global Warehouse have suffered and will continue to suffer an irreparable injury for which they has no adequate remedy at law.

**Wherefore**, Plaintiffs respectfully request that the Court grant the following relief: (a) award temporary and thereafter permanent injunctive relief against Fireclay and Niko requiring that they stop supplying Empire's sinks to Winslyn or anyone else other than Empire; (b) award compensatory damages against Fireclay

and Niko in an amount in excess of $75,000.00; and (c) award all other relief that this Court deems just and proper.

## COUNT IV: FRAUD
### (Empire against Niko and
### Your Global Warehouse against Niko and Fireclay)

71.    Empire and Your Global Warehouse incorporate paragraphs 1 through 70 as if fully set forth in this Count IV.

72.    Fireclay and Niko, through their principals Messrs. Shilling and Wood, have repeatedly represented to and assured Empire that they would not sell, and were not selling, Empire's sinks to anyone other than Empire.    Fireclay has specifically asserted that is was not selling the "new" designs concocted by Niko and Fireclay, and Winslyn's demand, in North America.

73.    These representations have been made in writing and orally, including by Fireclay's representative Peter Shilling on or around November 18, 2017 in the course of Empire's inspection of Fireclay's factory in Fujairah, United Arab Emirates, and in writing.

74.    These representations have now been proven false.    In fact, after contracting with Empire, in 2017, Fireclay and Niko engaged in communications with Winslyn to supply Winslyn with Empire's sinks and, thereafter, Fireclay and Niko did supply Winslyn with Empire's sinks by shipping those sinks to Winslyn in Illinois. Niko specifically assured Winslyn that these sinks would appear no different than Empire's designs, thus breaches its own obligations and directly aiding and abetting Fireclay's breaches of its obligations by directing communications facilitating these

breaches to Winslyn in Illinois, thus facilitating if not directing Fireclay's breaches in this district.

75. But for Fireclay's and Niko's representation to Empire that Fireclay would not sell or supply Empire's sinks or sink designs to anyone but Empire, Empire would not have disclosed Empire's sink designs to Fireclay and neither Empire nor Your Global Warehouse would have relied on or continued to rely on Fireclay as a supplier, made payments to Fireclay and Niko, or authorized Fireclay and Niko to represent that Empire's orders could justify financing for factory expansion to satisfy Empire's expected future demand.

76. Empire and Your Global Warehouse have been damaged by Fireclay's conduct, and will continue to experience damages in the future, by virtue of: (1) Winslyn's sale of Empire's sinks and sinks intended to look like Empire's sinks; (2) disruption of Empire's supply; (3) frustration of Empire's ability to obtain market share; (4) dilution of the value of Empire's proprietary designs; and (5) increased expenses associated with alternative supplies, all resulting in decreased sales, increased expenses, and reduced overall net profits that may exceed several million dollars a year for the foreseeable future.

77. As a direct and proximate cause of Fireclay's fraud, Empire has suffered monetary damages in an amount that exceeds $75,000.00, exclusive of costs and interest.

78.     As a direct and proximate cause of their breaches of Empire's agreement, Niko and Fireclay have caused Empire and Your Global Warehouse to suffer continuing irreparable injury for which it has no adequate remedy at law.

**Wherefore**, Plaintiffs respectfully request that this Court grant the following relief:  (a) award temporary and thereafter permanent injunctive relief against Fireclay and Niko requiring that they stop supplying Empire' sinks to Winslyn or anyone else other than Empire; (b) award compensatory and punitive damages against Fireclay and Niko in an amount in excess of $75,000.00; and (c) award all other relief that this Court deems just and proper.

## COUNT VII: CIVIL CONSPIRACY

### (Empire against Niko and
### Your Global Warehouse against all Defendants)

79.     Empire and Your Global Warehouse incorporate paragraphs 1 through 78 as if fully set forth in this Count VII.

80.     As set forth in the foregoing counts, Fireclay, Winslyn, and Niko have implemented and administered a common scheme to (a) interfere with Empire's contractual rights and those of Your Global Warehouse; (b) unjustly obtain benefits from Empire's designs and sinks produced in molds belonging to Empire and Your Global Warehouse; (c) breach the exclusivity agreement entered into between Fireclay and Niko, on the one hand, and Empire and Your Global Warehouse, on the other; (d) further Fireclay's and Niko's fraudulent scheme to appropriate Empire's sinks and sink designs for their own benefit; and (3) attempt to evade the effect of the Court's June 21, 2018 order and dispose of inventory subject to that order .

81. In implementing this scheme, Fireclay, Winslyn, and Niko have additionally used unlawful means – including, but not limited to, the misrepresentations, omissions, and concealments of material facts set forth above – to obtain the foregoing ends.

82. Empire and Your Global Warehouse have been damaged by Defendants' conduct, and will continue to experience damages in the future, by virtue of: (1) Defendants' sale of sinks based on Empire's designs; (2) disruption of Empire's supply; (3) frustration of Empire's ability to obtain market share; (4) dilution of the value of Empire's proprietary designs to Empire and Your Global Warehouse; and (5) increased expenses associated with alternative supplies, all resulting in decreased sales, increased expenses, and reduced overall net profits that may exceed several million dollars a year for the foreseeable future.

83. As a direct and proximate cause of Defendants' conspiracy against Empire and Your Global Warehouse, Empire and Your Global Warehouse have suffered monetary damages in an amount that exceeds $75,000.00, exclusive of costs and interest and has suffered and will continue to suffer an irreparable injury for which it has no adequate remedy at law.

**Wherefore**, Plaintiff Empire Industries Inc. respectfully requests that this Court grant the following relief: (a) award temporary and thereafter permanent injunctive relief against Fireclay, Niko and Winslyn by requiring that they cease the sale of sinks based on Empire's designs or made from Empire's molds; (b) award compensatory and punitive damages against Fireclay, Winslyn, and Niko, on a joint

and several basis, in an amount to be determined at trial; and (c) award all other relief that this Court deems just and proper.

Dated:  July 9, 2021                    HUSCH BLACKWELL LLP

                                        _/s/ Anders C. Wick_____
                                        Anders C. Wick (ARDC #6274319)
                                        120 South Riverside Plaza, Suite 2200
                                        Chicago, IL 60606
                                        Phone:  (312) 655-1500
                                        Facsimile:  (312) 655-1501
                                        anders.wick@huschblackwell.com

                                        ***Counsel for Plaintiffs Empire
                                        Industries, Inc. and Your Global
                                        Warehouse, LLC***